**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**PAUL L. STEWART,**

**Petitioner,**

**vs.** **Case No. 4:15cv508-WS/CAS**

**JOHN M. McHUGH,**
**Secretary of the Army,**

**Respondent.**

**_____________________________/**

## REPORT AND RECOMMENDATION

Petitioner, proceeding pro se, filed a petition on October 21, 2015, seeking judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, of the denial of his request to correct his military records.[1] ECF No. 1. The asserted purpose of the petition is review of an order entered by the Army Board for the Correction of Military Records [ABCMR] on July 16, 2015, denying Petitioner's request to correct his military records. *Id.* at 2; *see also* ECF No. 16 at 3. However, the underlying goal

[1] "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).

of the petition is to overturn Petitioner's court martials. ECF No. 1 at 4. Petitioner contends that "both court-martials violated [his] fundamental Constitutional rights" and should be declared "void" and "be removed." *Id.* at 4.

Respondent filed a motion to dismiss or, in the alternative, motion for summary judgment on February 12, 2016. ECF No. 12. Because Respondent's motion included, and cited to, various exhibits,[2] the motion was construed as a motion for summary judgment. ECF No. 15. Petitioner was provided an opportunity to submit an "amended" response to the motion for summary judgment, or he was advised that he could file a notice indicating his desire to stand on the response already filed.[3] *Id.* Petitioner filed an amended response to Defendant's motion for summary judgment on March 29, 2016. ECF No. 16. The motion is ready for a ruling.

One week later, on April 5, 2016, Petitioner filed a motion requesting that a discovery period be provided prior to ruling on summary judgment. ECF No. 17. Petitioner wanted discovery so that he could obtain "the

---

[2] Respondent's motion to seal the exhibits, ECF No. 11, was granted due to personal information which was included in the Administrative Record. ECF No. 15.

[3] Petitioner filed a response prior to issuance of an Order advising of the obligation to respond to the motion for summary judgment under Rule 56 and N.D. Fla. Loc. R. 56.1. *See* ECF No. 14.

complete record of courts-martial for both trials including all documents disclosed to the prosecution during discovery, as well as records of disclosure by the defense, phone calls and letters and the composition of the members of the court by race, rank, ethnicity and age." ECF No. 17 at 4. He has also requested the "minutes of the deliberation and any other records that might be deemed relevant or exculpatory." *Id.* Respondent opposed the motion, arguing that discovery was unnecessary beyond providing the Administrative Record for Petitioner's case because "facts outside the administrative record are simply irrelevant to the disposition of Petitioner's claim." ECF No. 18 at 2. Petitioner's motion was denied, ECF No. 19, and his motion for reconsideration was granted only to the extent that Petitioner's arguments were considered. ECF No. 21. The Order denying discovery would not be vacated because the standard of review under the Administrative Procedure Act [APA] is whether an "adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A)." Camp v. Pitts, 411 U.S. 138, 142, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973) (cited in ECF No. 18 at 2). "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some

new record made initially in the reviewing court." Camp, 411 U.S. at 142, 93 S. Ct. at 1244.

> Thus while certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not "generally empowered" to do so. In the instant case, we find nothing that would necessitate expanding the court's review beyond the administrative record. The record itself adequately explains the agency's decision and shows that it weighed the relevant factors.

Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1246-47 (11th Cir. 1996) (holding "[t]he District Court did not err in limiting its review to the administrative record and so did not abuse its discretion by granting a protective order prohibiting any discovery."). In general, a "party seeking discovery has 'a heavy burden to show that supplementation is necessary.'" Kirkpatrick v. White, 351 F.Supp.2d 1261, 1272 (N.D. Ala. 2004) (quoting United States v. Amtreco, Inc., 806 F.Supp. 1004, 1006 (M.D. Ga. 1992)) (quoted in Georgia River Network v. U.S. Army Corps of Engineers, No. 4:10-CV-267, 2011 WL 2551044, at *2 (S.D. Ga. June 27, 2011) (noting "the Court is typically confined to the administrative record"). Petitioner did not meet that burden and did not show the need for further discovery.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[4] though affidavits or other Rule 56 evidence "that there is a

[4] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex,

genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty

---

477 U.S. at 324, 106 S. Ct. at 2553.

Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578 (noting the distinction "between evidence of disputed facts and disputed matters of professional judgment."),[5] but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The Administrative Record**[6]

---

[5] Noting that deference must be given "to the professional judgment of prison administrators," the Court stated that "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 530, 126 S. Ct. at 2578 (citing Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003)).

[6] Because the Record has been sealed due to privacy concerns, only the necessary and relevant facts are recited here.

Petitioner enlisted in the United States Army on March 27, 1951, at the age of 17 "with parental consent." ECF No. 13, AR 004, AR 052; ECF No. 16-1 at ¶3 (Petitioner's affidavit).[7] After his initial training period, Petitioner was assigned to Camp Edwards, Massachusetts. AR 060; ECF No. 16-1 at ¶3. Petitioner was absent without leave (AWOL) on five occasions: June 18-25, 1951; July 2-9, 1951; August 9 - September 15, 1951; October 10-27, 1951; November 13, 1951 - August 1, 1952." AR 60, ¶4; AR 146, ¶ 6(b); AR 148. The record does not disclose what, if any disciplinary action was taken for the first four absences, but following his fifth AWOL (during which he was absent for "8 months and 29 days"), he was convicted on September 3, 1952, in a general court-martial held at Fort Dix, New Jersey. AR 060, ¶ 4. Petitioner was sentenced to hard labor confinement for six months, forfeiture of all pay and allowances, and a bad conduct discharge.[8] Doc 1-4, p. 25; AR 060, ¶ 4. Several days later on September 9, 1952, the sentence was suspended as to the bad conduct

[7] Citations to the Certified Administrative Record are annotated by "AR" and the last three digits of the page number, although the Record consists of six digits.

[8] There are five possible kinds of discharges from military service: (1) Honorable, (2) General (or Under Honorable Conditions), (3) Other than Honorable (formerly known as Undesirable), (4) Bad Conduct, and (5) Dishonorable. Blackwell v. Marsh, 574 F. Supp. 210, 211–12 (N.D. Ga. 1982) (quoting *Lunding*, "Judicial Review of Military Administrative Discharges," 83 Yale L.J. 33 (1973)).

discharge, AR 142, and Petitioner was granted clemency in order to have "the opportunity to rehabilitate himself for military service and earn an honorable discharge." AR 146, ¶ 6(c).

Following completion of the confinement portion of his sentence, Petitioner was transferred to Korea for a tour of duty. AR 060, ¶ 5. Petitioner states in his affidavit that he "served honorably in Korea for approximately 13 months, but came down with a rare form of malaria." ECF No. 166-1 at ¶ 3. After Petitioner completed that tour of duty, he was transferred to Fort Dix, New Jersey, with the 879th Field Artillery Battalion. AR 060, ¶ 5. Once again, Petitioner was AWOL from his unit from September 21, 1954, until April 15, 1955. AR 167, 171. Petitioner asserts that he "was hopelessly addicted to heroin when he returned to the [United] States and he again went AWOL." ECF No. 16-1 at ¶ 3. Petitioner was court-martialed for a second time and convicted of the offense of AWOL on April 27, 1955. AR 060, ¶ 6; AR 167. He was again sentenced to hard labor confinement, forfeiture of all pay and allowances, and to a dishonorable discharge (DD). AR 060, ¶ 6; AR 187; AR 119.[9]

---

[9] Petitioner states in his affidavit that he was "sentenced to two years at New Cumberland Disciplinary Barracks" and was not discharged until "sometime in 1957." ECF No. 16-1 at ¶ 3. Respondent asserted that Petitioner was sentenced to six months

On May 9, 1955, Petitioner's sentence was approved and forwarded to the Judge Advocate General for review. AR 125. Pursuant to Article 66 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (1950), the Judge Advocate General was required to establish a board of review to consider every court-martial in which the approved sentence included a DD. ECF No. 12 at 4, n.3. On June 8, 1955, the Army Board of Review approved the court-martial's findings and sentence. AR 118. On June 13, 1955, Petitioner filed a Petition for Grant of Review with the United States Court of Military Appeals. AR 117. The Court of Military Appeals denied the petition on July 22, 1955. AR 114. Petitioner's dishonorable discharge was approved on August 8, 1955.[10] AR 112. On January 6, 1956,

confinement. Although not pertinent, the Administrative Record reveals Petitioner was sentenced "to dishonorable discharge, forfeiture of all pay and allowances, . . . and confinement at hard labor for two (2) years, as promulgated in General Court-Martial Order Number 226, Headquarters 69th Infantry Division, Fort Dix, New Jersey, dated 9 May 1955," and was affirmed on August 8, 1955. AR 112; *see also* AR 117. It appears that Respondent's assertion of six months confinement is from the Record of Proceedings before the ABCMR. AR 004.

[10] Respondent explains that Petitioner's Certification of Military Service states that he was discharged on April 27, 1955. AR 041. However, final action approving the DD was taken on August 8, 1955, following final affirmance of the conviction. AR 112; 10 U.S.C. § 871(c) (1950) (providing that no sentence which includes a DD "shall be executed until affirmed by a board of review and, in cases reviewed by it, the Court of Military Appeals."). Thus, Petitioner's actual discharge date should be August 8, 1955. ECF No. 12 at 5, n.5.

Petitioner's request for clemency was disapproved, release on parole was disapproved, and restoration to duty was disapproved. AR 111.

Over 57 years later, Petitioner submitted an Application for the Review of Discharge from the Armed Forces (DD Form 293) on December 10, 2012, requesting an upgrade of his DD. AR 047. Petitioner argued that he should not have to endure punishment for "a lifetime" because of a crime from his youth in light of his honorable Korean War service. AR 048. On January 2, 2013, the Army Review Boards Agency advised Petitioner that he was required to file an application with the Army Board for Correction of Military Records (ABCMR) because more than 15 years had passed since the date of his discharge. AR 046. The letter directed Petitioner to submit a DD Form 149 (Application for Correction of Military Records). *Id.*

On January 12, 2013, Petitioner submitted a DD Form 149 to the ABCMR requesting a discharge upgrade. AR 043. Petitioner stated he took responsibility for his behavior which led to his sentence but argued that his confinement and dishonorable discharge should not haunt him for the rest of his life. *Id.*

On March 22, 2013, the Army Review Boards Agency notified Petitioner that it was unable to make a fair, impartial, and equitable determination on his application because Petitioner's military personnel records had been lost in a fire at the National Personnel Records Center (NPRC) in 1973. AR 042. As a result of the fire, the military records of approximately 18 million service members were destroyed. AR 099. It appears the majority of Petitioner's records were destroyed. *Id.* However, the records of trial for both of Petitioner's courts-martial exist. AR 163-188. Because Petitioner did not provide sufficient information to allow the Board to make a determination without his military personnel file, Petitioner's application was closed with no action. AR 042.

Subsequently, on March 27, 2013, Petitioner supplemented his application to the ABCMR with a Military Discharge Certificate and partial DD Form 214 (Certificate of Military Service). AR 037-40. On November 26, 2013, the ABCMR reviewed Petitioner's application. AR 032.

First, the Board excused Petitioner's failure to file his application for relief within the three year statute of limitations. AR 033-34. Second, the Board acknowledged that Petitioner's records were lost or destroyed in the fire at the NPRC, but determined that sufficient documents existed from "a

reconstructed personnel record, the record of trial, and documentation submitted by [Petitioner] for the [B]oard to conduct a fair and impartial review of this case." AR 033, ¶ 2. Third, the Board noted that Petitioner's discharge had been reviewed and approved on August 8, 1955, "after completion of all required post-trial and appellate reviews." AR 034-35, ¶ 9. Finally, the Board advised that "[c]ourtmartial convictions stand as adjudged or modified by appeal through the judicial process" and the Board was "not empowered to set aside a conviction." AR 005 at ¶ 10. The Board was "only empowered to change the severity of the sentence imposed in the court-martial process and then only if clemency is determined to be appropriate." AR 005 at ¶ 10. The Board concluded that clemency was not appropriate because the records revealed Petitioner "was twice convicted by a general court-martial for lengthy periods of AWOL" and he was "dishonorably discharged pursuant to the sentence of his general court-martial after his sentence was affirmed." AR 035, ¶ 1-2. The Board determined that "[g]iven the above, and after a thorough review of [Petitioner's] available records and any evidence submitted, the Board found no cause for clemency." *Id.* at ¶4. On December 3, 2013, Petitioner

was notified that his application for correction of his military records was denied. AR 30-31.

On November 4, 2014, Petitioner submitted a request for reconsideration to the Board. AR 007-029. In his request, Petitioner argued that his discharge should be upgraded because: (1) his misconduct which led to his discharge was committed "during the follies of his youth;" (2) his court-martial contained errors and he was not provided effective assistance of counsel; and (3) requesting the Board to "recognize that the 'severity of sentence' has been entwined with the nature of the sentence itself," he could benefit from clemency by being given access to health care through the Veterans' Administration and all the amenities which go along with honorable service. AR 021-25, 028-29.

On July 16, 2015, the Board reviewed Petitioner's request for reconsideration. AR 003. The Board again noted Petitioner enlisted in the Army on March 27, 1952 and was court-martialed on September 3, 1952, for a 272 day period of AWOL.[11] AR 003-4, ¶ 3-4. The Board

[11] In Petitioner's request for reconsideration to the Board, he stated that he was "returned to Fort Dix to face the second charge of desertion" after having been "arrested in new York City for possession of drugs." AR 020. Petitioner's case was dismissed and he "was turned over to the FBI and transferred to the stockade at Fort Dix, NJ." *Id.*

acknowledged that Petitioner's bad conduct discharge from his first court-martial had been overturned and Petitioner was allowed to continue serving in the U.S. Army. *Id.* at ¶ 4-5. However, Petitioner was again court-martialed on April 27, 1955, for another 268 day period of AWOL and was discharged pursuant to a duly affirmed court-martial conviction. *Id.* at ¶ 6. The Board found that, at the time of his discharge, Petitioner had served "two years of active service and had 516 days of lost time due to being AWOL and in confinement." AR 004, ¶ 7. The Board also pointed out that at the time of his initial application on January 12, 2013, Petitioner "was incarcerated in the county jail in Athens, Georgia." *Id.* at ¶ 8. Ultimately, the Board concluded that "[w]hile [Petitioner] contends that his discharge should be upgraded because his offenses were committed during the follies of his youth, it appears he was given a second chance when the convening authority elected to give him a second chance by not approving a [bad conduct discharge] during his first general courtmartial conviction and allowing him to be restored to duty." AR 005, ¶ 2. "However, [Petitioner] went AWOL again and he was properly issued a dishonorable discharge as a result of a duly affirmed court-martial conviction." AR 005, ¶ 2. The Board denied relief because Petitioner "provided no evidence of

good post-service conduct and the Board does not upgrade discharges simply for the purpose of qualifying individuals for benefits to which they otherwise would not be entitled." *Id.* at ¶ 6. On July 17, 2015, the Board notified Petitioner that, following reconsideration, his request for relief was denied. AR 002.

## ANALYSIS

### 1. Court Martial Proceedings

Federal courts do not have subject matter jurisdiction to review court martial convictions, so long as "the court-martial's acts be 'within the scope of its jurisdiction and duty.'" Schlesinger v. Councilman, 420 U.S. 738, 746, 95 S. Ct. 1300, 1307, 43 L. Ed. 2d 591 (1975) (stating that Congress has not conferred jurisdiction on any Article III court to directly review court-martial determinations). "The valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits." Schlesinger, 420 U.S. at 746, 95 S. Ct. at 1307. Schlesinger v. Councilman, 420 U.S. 738, 746, 95 S. Ct. 1300, 1307, 43 L. Ed. 2d 591 (1975). Petitioner has not shown that either court martial

proceeded without jurisdiction.[12] This Court lacks jurisdiction to afford Petitioner the relief he seeks: to void the judgment entered in his court martial. *See* ECF No. 1 at 10.

To the degree Petitioner seeks to collaterally challenge the judgment through the usual method of habeas corpus proceedings, Petitioner is not "in custody." He was convicted in the military court, dishonorably discharged, and served his sentence of hard labor in 1955. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (emphasis in original). A habeas petitioner is not "in custody" pursuant to the conviction or sentence under attack once that sentence has "fully expired." Maleng, 490 U.S. at 491–492, 109 S.Ct. at 1925-26. "[T]he collateral consequences of [a] conviction are not themselves sufficient to

[12] "[T]he proper exercise of court-martial jurisdiction over an offense [depends] on one factor: the military status of the accused." Solorio v. United States, 483 U.S. 435, 439 (1987) (quoted in Faison v. United States, No. 4:13CV540-RH/CAS, 2016 WL 922255, at *5 (N.D. Fla. Jan. 6, 2016), report and recommendation adopted, No. 4:13CV540-RH/CAS, 2016 WL 923114 (N.D. Fla. Mar. 10, 2016).

render an individual 'in custody' for the purposes of a habeas attack upon it." 490 U.S. at 492, 109 S. Ct. at 1926.

**2. Review under the APA**

Although this Court lacks jurisdiction to review Petitioner's court martial proceedings, the Court does have jurisdiction under the Administrative Procedure Act (APA) to review decisions of the ABCMR. Clinton v. Goldsmith, 526 U.S. 529, 539, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). ABCMR "decisions are subject to judicial review [by federal courts] and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." Chappell v. Wallace, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (quoted in Clinton, 526 U.S. at 539, 119 S.Ct. at 1544). "A reviewing court shall:

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> . . .
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Yearwood v. United States, 124 F. Supp. 3d 1204, 1207 (N.D. Ala. 2015) (quoting 5 U.S.C. § 706). The burden is on Petitioner to show that the ABCMR's decision was "arbitrary, capricious, unsupported by evidence, or contrary to the laws and regulations . . . ." Nolen v. Rumsfeld, 535 F.2d 888, 889 (5th Cir. 1976) (citation omitted).

"Under the APA, an agency decision is arbitrary and capricious where the 'agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoted in Perry v. Dep't of Army, No. 1:12-CV-73 WLS, 2013 WL 4432175, at *4 (M.D. Ga. Aug. 15, 2013)). "A former servicemember must present 'cogent and clearly convincing evidence' that the ABCMR acted arbitrarily or capriciously." Dodson v. U.S. Gov't, Dep't of Army, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993) (quoted in Perry, 2013 WL 4432175, at *4). The standard of review is "exceedingly deferential." Sierra Club v. Van Antwerp, 526 F.3d 1353, 1360 (11th Cir.

2008) (noting the court's role is to ensure that the agency came to a rational conclusion, “not to conduct its own investigation and substitute its own judgment for the administrative agency's decision.”) (citations omitted)).

Petitioner has argued “that the ABCMR’s decision was arbitrary or capricious or in bad faith or unsupported by substantial evidence or contrary to law, regulation or mandatory published procedure of a substantive nature by which Petitioner has been seriously prejudiced.” ECF No. 16 at 10. He contends it should be overturned because it was based on a “reconstructed record.” *Id.* at 4, 11. Petitioner acknowledges that he “was AWOL from his unit,” but questions records which indicated he was “part of the 466th AAA” unit. *Id.* at 11-12.[13] He argues that “the full record was not presented in a balanced form and was thus skewed in a manner to favor the prosecution.” *Id.* at 4. He contends that his court martial violated his Fifth and Sixth Amendment rights under the

---

[13] The Administrative Record shows he was assigned to :Battery B, 879th Field Artillery Battalion, 69th Infantry Division Artillery” when he went AWOL on September 21, 1954. AR 119. Moreover, the Record indicates Petitioner “pleaded guilty to the lesser included offense of absence without leave” and he testified that he “intended to return to [his] outfit.” AR 122, 169-170; 172-174. He testified that he was absent without leave because he was “unable to get along with various people in the company . . . .” *Id.* at 172, 176.

Constitution and is void. *Id.* He claims the ABCMR failed to address issues of discrimination and the "treatment of black troops prior to integration . . . ." *Id.* at 12.

Respondent points out that the ABCMR "had no authority to overturn his courts-martial convictions." ECF No. 12 at 20 (citing 5 U.S.C. § 1552(f)(1); 10 U.S.C. § 875-876). Thus, "there is no agency decision for the Court to review." *Id.* at 21. Respondent states that, essentially, the decision Petitioner requests this Court review is the one denying Petitioner clemency. ECF No. 12 at 22. Assuming, however, that the Court has authority to review the decision to deny clemency, Respondent contends "Petitioner is still not entitled to relief." ECF No. 12 at 23.

As noted by Respondent, Petitioner's "disagreement" with the Board's decision is not sufficient to warrant relief. ECF No. 12 at 23-24. Petitioner must show the Board's decision was "arbitrary, capricious, or not based on substantial evidence." Petitioner has not done so. The decision was based on substantial evidence, including Petitioner's own testimony and admissions. The fact that the evidence consisted of a "reconstructed record" does not mean it was not substantial. The Board's denial of Petitioner's request for relief is supported by the weight of the evidence.

Accordingly, Respondent's motion for summary judgment should be granted.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion for summary judgment, ECF No. 12, be **GRANTED** and the petition seeking review of the order entered by the Army Board for the Correction of Military Records be **DISMISSED**.

**IN CHAMBERS** at Tallahassee, Florida, on August 29, 2016.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Written objections to these proposed findings and recommendations must be filed within 14 days after being served with a copy thereof. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. A copy of the objections shall be served upon all other parties. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the**

**District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636. A party may respond to another party's objections within 14 days after being served with a copy thereof.**